## Oldham *vs* Robinson.

ERROR TO THE MADISON CIRCUIT.

*Non-resident debtors. Substitution. Jurisdiction. Chancery practice.*

JUDGE EWING delivered the Opinion of the Court.

CHANCERY.

*Case* 101.

May 26.

The bill.

To recover a debt of $478 15 cents, charged to be owing to him by Asa B. Smith, a resident of the state of

Missouri, Robinson filed his bill in chancery, in the Circuit Court of Madison County, Ky. against Smith and Oldham, the latter of whom was also, at the time and still is, a resident and citizen of Missouri, but upon whom personal process was served in Madison, and who is alleged to be indebted to Smith a much larger amount than is set up by Robinson against Smith. The object of the bill was to obtain a decree against Oldham, the debtor of Smith, for an amount sufficient to satisfy his, Robinson's, debt against Smith.

Oldham answered the bill, admitting that he had purchased land in Missouri of Asa B. and Merrel Smith, and had executed his two notes to them jointly, for $1600, one note for two thirds thereof, payable on the 1st January, 1838, the other for the residue, payable on the 1st January, 1839; but alleging that A. B. Smith had assigned his half of the notes to Merrel Smith, before the commencement of the complainant's suit, or the service of process upon him, in Madison.

The complainant filed his amended bill, making Merrel Smith a party, and alleged in substance that the assignment had been made after the commencement of his suit, by Asa B. to Merrel Smith, his son, who was under age, or had just arrived at age, fraudulently and without consideration, with a view to defeat his equity, and hinder and delay the creditors of Asa B. Smith, and the notes were held in trust by the son for the benefit of the father.

These facts were charged to be confined to the personal knowledge of the father and son, and not susceptible of proof, in Kentucky, as required by the statute of February 15th, 1838, *Stat. Law*, 202, to entitle the complainant to take the bill for confessed. And Oldham is alleged to be a non-resident and owns a tract of land in the county, which he prays may be subjected to his demand against Asa B. Smith.

Oldham answered the amendment, controverting the jurisdiction of the Court, and alleging that Merrel Smith, as assignee, had sued him, in Missouri, on the note which first fell due, and recovered a judgment, and he exhibits a copy of the record, from which it appears that judg-

ment had been recovered, but the *prior* institution and pendency of the complainant's attachment was not pleaded or relied on or attempted to be set up.

On the hearing, the Circuit Court decreed that Oldham should pay to the complainant $523 57 cents, and the costs, in satisfaction of the complainant's demand, including interest, on or before the next term of the Court, and should be entitled to a credit for the amount on the notes of the Smiths, or either of them, and the money not being paid, at the next term of the Court decreed a sale of so much of Oldham's land as would pay it. From this decree Oldham has appealed to this Court.

Though Oldham and A. B. Smith were both residents of Missouri at the institution of the suit, and continued to reside there, as Oldham, the debtor of Smith, was found here, and process personally served on him here, the Court had unquestionable jurisdiction of the case as to him and his immediate creditors under our statute. The statute authorizing this proceeding does not require that the debtor of the non-resident debtor shall reside here; it only requires that he "*shall be within this state:*" Acts 1836–7, 103.

Smith might have sued Oldham, had he found him here, and the complainant, the creditor of Smith, by right of substitution may exercise, and was intended by the statute to be indulged in the exercise of the same privilege. Residence in another state is not a privilege that will exempt any one from being sued here, if he be found in this state, and occupies a condition that lays him liable to a suit. The complainant's means of making his debt may be rendered more precarious and uncertain, when the debtor of his non-resident debtor is also a non-resident, but his right to try, ought not thereby to be impaired, nor was it, by the statute, intended to be withheld from him.

But a question of more difficulty occurs, and that is, whether the Court in Madison could draw in question and exercise jurisdiction over the assignment of the notes and other transactions between the two Smiths, all of which took place in Missouri, and between residents and citizens of that state, and determine upon the fraud

Decree of the Circuit C't for complainant.

The courts of Ky. have jurisdiction in favor of a resident creditor on bill filed against a non-resident debtor and his debtor, tho' the last be a non-resident also, if process be here served on him and he have effects in this country on which the decree may operate.

The debtor of compl't. might have sued his debtor if found here, and the creditor (complainant) will be substituted by the Chancellor to the rights of his debtor.

Our courts have jurisdiction to try incidentally an alleged fraud in the assignment of notes & demands for money attached by the Chancellor to satisfy a resi-

dent creditor's demand against a non-resident, tho' the assignment may have been made in another state.

The *effects* of non-resident debtors will be subjected by the Chancellor to the satisfaction of his debts, in the hands of others—who will be protected against the debtor thereafter.

charged, and the secret trust terms upon which these notes were held by young Smith. If the Court here cannot exercise jurisdiction, then might their decree be disregarded in Missouri as a nullity, and Oldham be made liable to a double payment of the same debt, first under the coercive power of the Court here, and then under a judgment of the Courts in Missouri.

It has been well settled by this Court, as well as by other tribunals, that the effects of a non-resident, found in the state, as well as debts due to him by individuals here, may be attached and subjected to the payment of debts due by the non-resident, to the attaching creditor here, in a proceeding under our statute regulating proceedings against non-resident debtors. The *effects* as well as the *debts* are subject to the control of the Court, as *things* within its jurisdiction, and held or owing by individuals here, who may be subjected to the coercive action of the Court. Under the operation of such laws great wrong and injustice may be done to the non-resident debtor, whose rights may be adjudicated upon and his effects or debts wrested from him, without notice, or just claim. Yet this proceeding has long been indulged in here and elsewhere, and the adjudication of the Court sustained in other states and nations, where it has been made to act on the *thing* or *debt* within the jurisdiction and control of the Court making it, so far as to protect the holder of the effects from subsequent liability, or the debtor who has been made to pay the debt, and has paid it to the attaching creditor, from a liability to his original creditor, though he had no notice in fact of the pendency of the proceedings, and was, during the whole time, a resident of another state or nation: *Embree and Collins* vs *Hanna*, 5 *John. Rep.* 101; *Chevelier* vs *Lynch, Doug.* 170; *Allen* vs *Dundass*, 3 *Term Rep.* 125, 4 *Term Rep.* 187; 1 *H. Bl.* 669, 671, 683; 2 *H. Bl.* 408, 410; *Holmes* vs *Runson*, 20 *John. Rep.* 229. And in the case of *Embree and Collins*, first cited, and *Brook* vs *Smith*, 1 *Salk.* 280, it was determined that the prior institution and pendency of a foreign attachment might be pleaded in abatement of a subsequent suit, brought by the original creditor in another state. Whether this latter principle be

sustainable we need not stop to enquire; however, it may be remarked, that if allowable, it can only be permitted in cases where the *whole* debt has been attached and not a part of it only. A plea in abatement must go to the whole action or writ, where the demand is entire. A suit cannot be abated as to part of the debt and progress as to the residue, as may be done when a plea in bar is pleaded, which goes only to a part of the action, and presents a good bar to the same. Besides, we can perceive no very good reason against permitting the original creditor, even when the whole debt or demand has been attached, from proceeding to judgment, and to the coercion of those securities which the laws of the country may provide for the safety of the same, leaving the debtor to his remedy in Chancery to stop the collection, until the foreign attachment shall be decided; as upon the hearing it may fail.

Be this as it may, we cannot doubt that the Chancellor in Madison, could rightfully take jurisdiction and exercise control over the debt due from Oldham to Asa B. Smith, and his decree and application of the money to the complainant's demand, and the payment thereof, ought to be respected by the Courts in Missouri, and might be relied on there to defeat a second recovery by Smith, of the same demand. And after jurisdiction had attached here, the Courts there would be bound to respect the proceedings and afford protection against a second liability, by the well settled principles of the English Courts, and the same comity should be more especially regarded by the tribunals of these states. Here the constitution of the United States provides that "full faith and credit shall be given in each state, to the public acts, records, and judicial proceedings of every other state. And the Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the *effect* thereof." And the act of Congress of 1790, provides "that the records and judicial proceedings of each of the states, shall have such faith and credit given to them, in every Court within the United States, as they have, by law or usage, in the Courts of the state from whence the said records are or shall be taken."

OLDHAM
*vs*
ROBINSON.

The judicial de-
cisions of sister
states are enti-
tled to full effect,
where the courts
had jurisdiction
over the *person,*
*subject,* or *thing.*

Where the non-
resident debtor
and the debt are
both within the
·state, & process
is served on the
debtor, the juris-
diction to decree
away the demand
in favor of a re-
sident creditor is
clear—and full
power to decide
all incidental
questions pre-
sented in the in-
vestigation.

We are aware that such construction has been given to this section of the constitution and act of Congress, as to give force and effect in other states, to the judicial proceedings of a sister state, only in cases where the Courts had and could rightfully take jurisdiction over the person or subject, or where the person or subject was within the state, and jurisdiction attached by reason of personal service, or the power and control which may be exerted over the *subject* or *thing.* And beyond this, they perhaps ought not to have force and effect in other states, as they ought not rightfully to have greater force and effect in the state where they are had.

But in cases where jurisdiction may be rightfully taken, and has been taken and exercised according to the ascertained modes of proceeding in other states and nations, the judicial proceeding and decree must have the same force and effect in other states which they have, by law or usage, in the states where they are had or obtained: See *Starkie on Evidence*, 1, 215, Note 1, and the authorities there referred to.

As Oldham the *debtor,* and the *debt* owing by him to Smith, were within the jurisdiction of the Madison Circuit Court, at the time process was served on him, and subject to the control of the Court, the Court had unquestionable jurisdiction, to the *extent* of the *debt,* and had the power to compel its payment, in satisfaction of the complainant's demand. And having jurisdiction and the power to apply it, its decree must have the same force and effect, in Missouri, against Smith the original creditor, as it has in this state. And jurisdiction over the principal question, the application of the debt, it seems to us, would draw to it jurisdiction over all incidental questions that might arise or be involved in the inquiry, and become necessary to be determined, with a view· to a proper determination of the principal question, and a rightful application of the debt. And if so, the Court in Madison could rightfully take jurisdiction and determine upon the collusion and fraud, charged in the assignment of the notes and the ante-dating the same, with a view to overreach the jurisdiction which had before attached, and

its determination must have the same force and effect in Missouri that it has here.

If this be not the case, then would our proceedings against non-resident debtors be vain and nugatory, and so would the proceedings in foreign attachment, in all other states and countries. For if the Court, after jurisdiction attached, would have no right to inquire into the invalidity of the assignment, then nothing would be easier than for the non-resident debtor to elude and wholly defeat the action of the Court here, by collusion and fraud with another, and ante-dating the assignment after he had in fact notice of the commencement of the suit.

Nor is there any greater hardship on the assignee, who by constructive service, is made a party to the suit here, than is on the original creditor. Neither may, in fact, have notice or hear of the proceedings until the determination has been made and the debt is applied and paid. He claims the debt *under* and by *assignment* from the original holder, and may be considered as holding the same, subject to the same hazards, as to his right to enforce its collection from the debtor. But as Oldham and the Smiths were all residents of the same state, and most likely of the same neighborhood, and Oldham was sued for the debt there, before the termination of the suit here, it is to be presumed that they were apprised of the pendency of the suit here, and if young Smith failed to defend and assert his claim to the debt, but permitted the bill to be taken for confessed against him, whereby a decree is obtained against Oldham, he has no just ground to complain.

And under our statute, if he be a *bona fide* assignee, and had no notice of the suit here, and injustice has been done him, the hardship is not without remedy; since he, as well as the original creditor, may, at any time within seven years, come in and open the decree here, and assert his prior right to the debt, and if it has been paid, he may be redressed by proceeding upon the bond which the complainant is required to give, with security, for his indemnity.

Upon the whole, we think the Circuit Court had jurisdiction of the whole subject, under our statute, and the

allegations, as to the fraud in the assignment being made substantially as required by the statute, were properly taken for confessed against the two Smiths, and the decree directing the amount of the complainant's demand, with interest and costs, to be paid by Oldham, out of the same, was proper.

We also think, that as Smith, the creditor of Oldham, might have proceeded against his land in Madison, as a non-resident of this state, upon his leaving Madison county for his residence in Missouri, so the complainant, within the spirit of our statute, might be substituted in his place, and upon Oldham's leaving the country, for his residence, might, as he did, amend his bill, charging the fact, and proceed against his land as the means to secure the payment of his debt, upon his obtaining a decree against Oldham.

It is, therefore, the opinion of the Court, that the decree of the Circuit Court be affirmed with costs and damages.

*Owsley* for plaintiff: *Turner* for defendant.